**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| DANIEL RAEDE GUERIN,<br>Plaintiff,<br>v.<br>RURAL TELECOM EXPERTS, INC.; DIGITAL SOLUTIONS INC. d/b/a GDS TELECOM; 46 LABS, LLC d/b/a HYPERCUBE NETWORKS; JOHN DOE CORPORATION d/b/a "EXECUTIVE LENDING UNIT"; and DOES 2–20,<br>Defendants. | No. 2:26-cv-04078-SKV<br>**SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (47 U.S.C. § 227; RCW 80.36.390; RCW 80.36.400; RCW 19.86)**<br>**JURY TRIAL DEMANDED** |

Plaintiff Daniel Raede Guerin ("Plaintiff") alleges as follows. Allegations about Plaintiff and his own acts are made on personal knowledge. All other allegations are made on information and belief, formed after a reasonable inquiry that included the public records of the Federal Communications Commission (the "Commission" or "FCC"), federal court dockets, state business registries, and the public history of the national toll-free number registry.

## I. NATURE OF THE ACTION

1. Between 18 January 2026 and 30 October 2026, Plaintiff's personal cellular



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

telephone, (360) 674-0698, received at least 216 telephone calls that each left a prerecorded or artificial-voice message offering him a personal loan. Each call displayed a different caller identification number, and each message told Plaintiff to call back on a number that the callers controlled.

2. The callback numbers are the thread that leads to the Defendants. At least 139 of the 150 callback numbers given to Plaintiff were moved into one account of Responsible Organization codes that belong to Defendant 46 Labs, LLC, all but two of them on a single day, 4 March 2026, and 189 of the 216 calls gave Plaintiff at least one of those numbers. In another federal action against the same calling operation, 46 Labs' subsidiary produced records tying three numbers in that same account, in blocks that supplied 41 of the callback numbers given to Plaintiff, to Defendant Rural Telecom Experts, Inc. and Defendant Digital Solutions Inc. The Commission had already identified Digital Solutions as the originating provider of prerecorded "loan approval" robocalls of this kind.

3. Each carrier was told what this traffic was, could have stopped it, and kept carrying it. Digital Solutions received the Commission's notice in April 2026 and was removed from the Robocall Mitigation Database on 5 October 2026. Rural Telecom Experts was named as a defendant over the campaign's calls in August 2026. Three days after the Commission cut off Digital Solutions, every callback number given to Plaintiff that was held under one 46 Labs code was moved to another 46 Labs code, and the calls went on. The calls to Plaintiff stopped on the day 46 Labs was served with this action.

4. Plaintiff brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and under Washington law. Since 2023, RCW 80.36.400(3) has made it unlawful to "assist in the transmission" of a commercial solicitation made by automatic dialing and announcing device, so that the companies that carry such calls are liable alongside the company that pays for them. The Washington Legislature enacted that provision to reach persons who "provide substantial assistance or support in the origination



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

and transmission of robocalls”. Laws of 2023, ch. 103, § 1(2).

## II. PARTIES

5. Plaintiff Daniel Raede Guerin is a natural person and a citizen of the United States. He is, and at all relevant times was, the subscriber and sole user of cellular telephone number (360) 674-0698.

6. Defendant Rural Telecom Experts, Inc. (“RTE”), which also trades as “RTE Edge”, is a Washington corporation with its principal place of business at 1329 N. State Street, Suite 308, Bellingham, Washington 98225. RTE is a competitive local exchange carrier registered with the Commission as Form 499 filer 833318. Its chief executive officer, Dave Ahmadbadi, has declared under penalty of perjury that RTE is a Washington corporation with that address, and that its registered agent of record with the Washington Secretary of State is Nikoo Products Inc, at the same address.

7. Defendant Digital Solutions Inc. (“Digital Solutions”), which also does business as “GDS Telecom”, “GDS Solutions” and “Global Digital Solutions”, is a Colorado corporation, Colorado Secretary of State entity number 20251190566, formed on 20 February 2025, with a stated address of 1050 Curtis Street, Denver, Colorado 80202. Its registered agent of record is First Tele Communications, Inc., 1401 17th Street, Denver, Colorado 80202. Digital Solutions holds itself out as a voice service provider and has filed certifications in the Commission’s Robocall Mitigation Database in the name of its chief executive officer, Richard Anderson.

8. Defendant 46 Labs, LLC (“46 Labs”) is an Oklahoma limited liability company. Its headquarters address on file with the Commission is 1503 E. 19th Street, Edmond, Oklahoma 73013, and it maintains offices at 603 Munger Avenue, Suite 300, Dallas, Texas 75202. 46 Labs provides wholesale voice origination, termination, toll-free and inbound calling services. It acquired control of Hypercube Networks, LLC (“Hypercube”), which it operates as a subsidiary. References in this Complaint to 46 Labs include Hypercube.



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

9. With effect from 1 August 2024, 46 Labs bought from Lingo Telecom, LLC ("Lingo") its wholesale Feature Group D network, its toll-free services and all of its Responsible Organization codes, including the codes TUI02 and TUI05 that Lingo had operated under the name of its predecessor, Excel Telecommunications. Lingo's chief compliance officer has so declared under penalty of perjury, and has declared that Lingo was not the Responsible Organization, carrier or service provider for the toll-free numbers at issue in this action on or after February 2026. Dkt. 11-1 ¶¶ 2–3. Plaintiff therefore dismissed Lingo without prejudice, Dkt. 11, and alleges that 46 Labs, not Lingo, has held and operated the codes TUI02, TUI05 and TUI07 at all times relevant to this action.

10. Defendant John Doe Corporation d/b/a "Executive Lending Unit" ("Executive Lending Unit") is the person or entity, whose true name is presently unknown to Plaintiff, that initiated the calls described in this Complaint, caused them to be initiated, or on whose behalf they were made.

11. Defendants Does 2 through 20 are the persons and entities, whose true names are presently unknown to Plaintiff, that participated in initiating, originating, transmitting or routing the calls; that supplied the callback numbers, dialing platforms, recorded messages or lead lists used to make them; that received or answered the returned calls; or that own or control any other Defendant. They include the customers of RTE and Digital Solutions for whom the calls were placed, and any affiliate of 46 Labs that held or administered the callback numbers. Plaintiff will amend this pleading to state their true names when they are learned.

## III. JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over Plaintiff's TCPA claims under 28 U.S.C. § 1331, because they arise under a law of the United States. *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012). The Court has supplemental jurisdiction over Plaintiff's claims under Washington law under 28 U.S.C. § 1367(a), because they arise from the same



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

calls and form part of the same case or controversy.

13. This Court has general personal jurisdiction over RTE, which is incorporated in Washington and has its principal place of business in this District.

14. This Court has specific personal jurisdiction over 46 Labs. Plaintiff's claims against 46 Labs arise out of contacts that 46 Labs itself created with Washington:

(a) 46 Labs, through Hypercube, entered into a contractual relationship with RTE, a Washington corporation based in Bellingham, concerning toll-free numbers 866-398-3898 and 844-515-1201, and holds master service agreements, toll-free service schedules, invoices and know-your-customer documentation for RTE (¶ 37);

(b) those two numbers sit in the same account, under the same Responsible Organization code, entered on the same day, and in the same number blocks as 17 of the callback numbers given in the messages to Plaintiff (¶ 38);

(c) 46 Labs therefore knew from its own know-your-customer records that the customer for which it reserved and administered those numbers was a Washington carrier, and it supplied and administered the numbers for that Washington customer, invoiced it, and on information and belief was paid by it; and

(d) the numbers were used in calls directed at a Washington telephone number, and 46 Labs routed the returned calls for the campaign.

These are not contacts that Plaintiff or a third party created. They are the contracts and services that 46 Labs chose to provide to a Washington company, and Plaintiff's claims arise directly out of them, because the numbers that 46 Labs supplied to and administered for RTE are numbers of the same account and blocks as the numbers in the messages to Plaintiff.

15. This Court has specific personal jurisdiction over Digital Solutions. Digital Solutions originated calls directed to a Washington telephone number, Plaintiff's, and on information and belief it originated them for a customer whose traffic and callback numbers were handled through RTE, a Washington carrier. Digital Solutions also shares with RTE a



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

single chain of registered agents (¶¶ 44–45). Plaintiff's claims against Digital Solutions arise out of that conduct.

16. This Court has specific personal jurisdiction over Executive Lending Unit and Does 2 through 20, each of whom purposefully directed the calls at a Washington telephone number and, on information and belief, caused them to be carried through RTE, a Washington carrier.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred here. The calls were directed to a Washington telephone number, and RTE, from Bellingham, contracted for and administered telephone numbers used in the campaign. Venue is also proper under 28 U.S.C. § 1391(b)(1) as to RTE, which resides in this District.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Washington telephone number

18. Telephone number (360) 674-0698 is a cellular telephone number assigned to Plaintiff by T-Mobile USA, Inc. ("T-Mobile") on a consumer plan held in Plaintiff's own name. Plaintiff is the only person who uses it.

19. The number is a Washington telephone number. Its area code, 360, serves western Washington, and the industry's numbering records assign its exchange and thousands-block, 360-674-0, to T-Mobile in the Bremerton, Washington rate centre.

20. The T-Mobile account for that number is billed to 11548 Arnold Road SW, Rochester, Washington 98579, the address at which Plaintiff resided when he opened the account. The account is paid from Plaintiff's personal payment card. Plaintiff is the telephone customer of a Washington telephone number, on an account billed to a Washington address.

21. A caller who dials a ten-digit telephone number chooses its area code and exchange, and the area code and exchange of this number identify it to any caller as a Washington number. Each of the calls described in this Complaint was therefore intended to



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

be received by a telephone customer within the State of Washington, within the meaning of RCW 80.36.390(9) and (10) and RCW 80.36.400(2). Those provisions turn on the telephone customer and on the intent of the sender. They do not make the recipient's physical location at the moment a call arrives an element of the claim, and a caller who leaves a recorded message on a Washington number cannot know where its holder is at that moment. The Legislature described the 2023 amendment to RCW 80.36.390 as reaching "unwanted telephone calls to Washington telephone numbers on the do not call registry". Laws of 2023, ch. 103, § 1(3)(a).

22. Plaintiff registered (360) 674-0698 on the National Do Not Call Registry on 7 February 2018, and it has remained registered continuously since then. The Federal Trade Commission has confirmed the registration to Plaintiff in writing.

23. The number is a personal line on a consumer plan, and Plaintiff uses it primarily for personal purposes. Although he has at times used it to place calls in the course of his work, to the best of his knowledge and recollection he has never listed it on any business website, invoice, business card, advertisement or directory, and he has never held it out to the public as a business line. It is a residential telephone line within the meaning of 47 C.F.R. § 64.1200(c)(2) and (e).

24. Plaintiff has never applied for a loan from, requested information from, or done business of any kind with any Defendant, or with any entity calling itself "Executive Lending", "Executive Lending Unit", "Lending Resource Center", "Monarch Lending Union" or any similar name. He has never given any Defendant his telephone number, and has never given any Defendant consent, written or otherwise, to call him with a prerecorded or artificial voice.

25. Plaintiff has never pressed a key in response to any of the calls and has never spoken to anyone associated with them.

**B. The 216 calls**



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

26. Between 18 January 2026 and 30 October 2026, Plaintiff's number received at least 216 telephone calls that each left a recorded voicemail message offering a personal loan. Each call, with its date and time, the caller identification number displayed, the callback number or numbers given, and the opening words of the message, is listed in Exhibit A. Plaintiff has preserved every message.

27. Of the 216 calls, 196 were listed in the First Amended Complaint. Seventeen more arrived between 21 and 30 October 2026. The other three, of 18 January, 27 January and 17 July 2026, were recovered from a backup of Plaintiff's handset after the First Amended Complaint was filed, because T-Mobile had not delivered them as written voicemail transcripts.

28. Each message was delivered by a prerecorded or artificial voice. That is shown by, among other things, the following facts:

(a) Plaintiff did not answer any of the calls, and every message was left on his voicemail without any person speaking to him;

(b) the messages repeat identical scripts across many calls, word for word, with only the persona name, loan amount and callback number changed. For example, at least 11 messages from 11 different caller identification numbers, received between 15 and 20 October 2026, recite that Plaintiff qualifies "for a personal loan up to $52,000" at rates "starting around 5.9%" with a payment of about "$858 a month", and seven messages from seven different numbers between 26 and 30 October 2026 recite one script in the name of "Melissa Collins";

(c) at least 171 of the messages instruct Plaintiff to press, dial or choose "1" or "2" to be connected, and at least 13 more instruct him to press "9" to stop further calls, instructions that are only meaningful to an automated system;

(d) the same persona names recur across many calls, each from a different caller identification number, including "Marissa Morgan" (24 messages from 24 numbers),



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

"Michelle Wilson" (12 from 12) and "Daniel Reeves" (9 from 9); and

(e) on two occasions two messages reciting the same script arrived in the same minute from two different caller identification numbers, and another message arrived at 2:47 a.m. Pacific Time, when no lender's staff would be making live calls.

29. Each call was made for the purpose of encouraging Plaintiff to purchase, or to obtain, a loan or related financial services, or to wrongfully obtain something of value from him. Each was a "telephone solicitation" within the meaning of 47 U.S.C. § 227(a)(4) and RCW 80.36.390, and a "commercial solicitation" within the meaning of RCW 80.36.400(1)(c).

30. The messages falsely represented that Plaintiff had applied for, requested or been pre-approved for a loan. At least 72 of them refer to a pre-approval, and several stated that a pre-approval had been "mailed" to him. Plaintiff never made the loan application or loan request that the messages describe, and he has never received a pre-approval from any of the persons or entities that left them.

31. The caller identification numbers were falsified. All 216 calls displayed different numbers, and 25 of them displayed Canadian numbers although every message promoted a loan and gave a United States callback number. None of the messages asked Plaintiff to call back the number that the call displayed. On information and belief, the callers did not hold or control the numbers they displayed, and displayed them to defeat call blocking, to conceal the source of the calls and the providers that carried them, and to increase the likelihood that Plaintiff would answer or listen.

**C. Who held the callback numbers**

32. Unlike the caller identification numbers, the callback numbers could not be falsified, because a returned call reaches only the person to whom the number actually routes. Every toll-free number is reserved in the national toll-free registry, administered by Somos, Inc., by a Responsible Organization ("RespOrg"). The RespOrg records the customer to



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

which the number is assigned and controls where calls to the number are delivered. A RespOrg may operate under several five-character codes. Codes TUI02, TUI05 and TUI07 are codes of one RespOrg: they share the same leading characters, and the registry history lists all three under one RespOrg name. A number cannot be moved into a RespOrg's account unless that RespOrg accepts it, and the registry records the date of each change. A RespOrg therefore knows, for every number in its account, which customer holds it, who pays for it, and where returned calls are routed.

33. The 150 callback numbers given in the messages to Plaintiff were held as follows. Exhibit B lists every number, the calls in which it was given, and its code. The registry information is taken from the public registry history published at resporgs.com, which is compiled from snapshots of the Somos registry, as retrieved on 5 and 11 November 2026. Some calls gave two numbers, so the call counts below add up to more than 216.

| Callback numbers | Calls | RespOrg code | Entered 46 Labs account | Connection to a named Defendant |
|---|---|---|---|---|
| 17 numbers in the 866-398 and 844-515 blocks | 24 | TUI02 (46 Labs) | 4 March 2026 | Hypercube stated it had a contractual relationship with RTE concerning 866-398-3898 and 844-515-1201, which are in the same blocks, under the same code, and entered the account the same day (¶ 37) |
| 24 numbers in the 877-578 block | 33 | TUI05, moved to TUI07 on 8 October 2026 (46 Labs) | 4 March 2026 | Hypercube identified Digital Solutions as associated with 877-578-3476, which is in the same block, under the same codes, and entered the account the same day (¶ 37) |
| 54 other numbers | 113 | TUI02 (46 Labs) | 4 March 2026 | 46 Labs is the RespOrg (¶ 35) |
| 44 other numbers | 74 | TUI05, moved to TUI07 on 8 October 2026 (46 Labs) | 4 March 2026 (two in March–April 2026) | 46 Labs is the RespOrg (¶ 35) |
| 8 numbers (866-959 block, 833-588-3768, 833-588-3805, 855-909-0815) | 25, from 18 January to 17 March 2026 | AUE04 (NumHub); now PJP03 (Independent Resporg) | — | Not yet known; used only before the campaign moved into the 46 Labs account |
| 866-666-1384 | 1 | SOE72 (Signal One) | — | Not yet known |



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

| Callback numbers | Calls | RespOrg code | Entered 46 Labs account | Connection to a named Defendant |
|---|---|---|---|---|
| 877-967-3236 | 3 | ZXS19 (Haven Partners) | — | Always given together with 877-578-2110, a number in the 877-578 block |
| 949-565-3310 (not toll-free) | 1 | Local number; thousands-block assigned to Level 3 Communications in the Irvine, California rate centre | — | Not yet known |

34. All 139 numbers in the first four rows of the table are held in a single account of the RespOrg whose codes begin “TU”. The registry records that 137 of them entered that account on the same day, 4 March 2026. The other two, 877-372-0946 and 888-905-0054, came into it from Intrado Communications in the same period, between the registry’s March and April 2026 snapshots. Many of them came from Intrado Communications. A transfer of well over one hundred toll-free numbers into one account on one day, all of them later used as callback numbers in one calling campaign, is the act of a single customer and of the RespOrg that accepted them. Plaintiff alleges on information and belief that 46 Labs assigned those numbers to one customer, or to RTE and Digital Solutions for one customer, acting for Executive Lending Unit, and that 46 Labs’ records identify that customer, the person who paid for the service, and the provider to which returned calls were routed.

35. The “TU” codes belong to 46 Labs. Lingo sold all of its RespOrg codes, including TUI02 and TUI05, to 46 Labs with effect from 1 August 2024 (¶ 9). On 29 October 2026 Lingo’s regulatory department wrote to Plaintiff that 46 Labs “has also owned the RespOrg(s) in question since August 2024” and that “[m]ost of the toll-free numbers in question belong to Hypercube Network, LLC (46 Labs, LLC)”, and it reproduced the registry’s public lookup for 855-357-2202, the callback number in nine of the messages to Plaintiff, which states that the number is “currently reserved by Hypercube Networks, LLC.” Dkt. 10-1 ¶¶ 2–3 & Ex. 1. The registry history continues to display the codes under the name



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

"Excel Telecommunications", but Lingo has declared that it is no longer a RespOrg under any of its brands, including Excel Telecommunications. Dkt. 11-1 ¶ 3. The codes, including TUI07, are therefore 46 Labs' codes.

36. The campaign moved into the 46 Labs account and stayed there. The first message to give Plaintiff a callback number in that account arrived on 12 March 2026, eight days after the transfer. From 18 March 2026 onward, 187 of the 189 calls to Plaintiff gave him a number in that account.

37. In *Svoboda v. John Doe Corporation dba Executive Lending Unit*, No. 1:26-cv-03559 (N.D. Ill., filed 31 March 2026), the plaintiff received prerecorded calls from the persona "Marissa Morgan", the same persona that left 24 of the messages on Plaintiff's telephone, giving callback number 866-398-3898. The court authorized limited discovery. As that plaintiff alleges in his First Amended Complaint, filed 10 August 2026, Hypercube responded to a subpoena issued to "Lingo Telecom, LLC d/b/a Excel Telecommunications"; it stated that it had a contractual relationship with RTE concerning 866-398-3898 and 844-515-1201, identified Digital Solutions as associated with 877-578-3476, and stated that it possessed master service agreements, toll-free service schedules, invoices and know-your-customer documentation for RTE and Digital Solutions. That plaintiff then named RTE and Digital Solutions as defendants.

38. Numbers 866-398-3898 and 844-515-1201 are themselves in the 46 Labs account, under code TUI02, and the registry records them as entering it on 4 March 2026, the same day as the callback numbers given to Plaintiff. Eight of Plaintiff's callback numbers are in the same 866-398 block and nine are in the same 844-515 block, all under code TUI02 and all entered on 4 March 2026. Those 17 numbers were given to Plaintiff in 24 calls between 18 April and 28 October 2026.

39. Number 877-578-3476 is likewise in the 46 Labs account. It came from Intrado Communications, was held under code TUI05, and is now held under code TUI07 (¶ 53).



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

Twenty-four of Plaintiff's callback numbers are in the same 877-578 block and have the same history: each entered the account on 4 March 2026, was held under TUI05, and is now held under TUI07. Those 24 numbers were given to Plaintiff in 33 calls between 14 March and 27 October 2026.

40. In *Marchetti v. 46 Labs, LLC*, No. 2:26-cv-05805 (E.D. Pa., filed 13 August 2026), a recipient of prerecorded loan calls that Plaintiff alleges on information and belief belong to the same campaign sued 46 Labs, RTE and Digital Solutions. That plaintiff alleges that a representative of 46 Labs told him that "two entities", which the representative identified as Global Digital Solutions/GDS and RTE, "sent you these calls". On 20 October 2026 the court denied 46 Labs' motion to dismiss his claims under 47 U.S.C. § 227(b) and (c). *Marchetti*, Doc. 28 (E.D. Pa. 20 Oct. 2026).

41. In *Marchetti*, RTE's chief executive officer declared under penalty of perjury that "[a]ny call that reached a telephone number in Pennsylvania in connection with the traffic at issue did so because a customer of RTE, or a customer of that customer, dialed that number", and that RTE's business records include its "corporate, customer, e-mail, compliance and call detail records". *Marchetti*, Doc. 25-2 ¶¶ 1, 13. RTE thus acknowledges that the campaign's traffic in that case was placed by its customers, or their customers, over its network.

42. The Commission identified Digital Solutions as the originating provider of prerecorded "loan approval" robocalls of the kind Plaintiff received. The Industry Traceback Group traced to Digital Solutions 51 prerecorded calls placed to wireless numbers between 6 May and 8 July 2025. Nineteen of them purported to be from someone on the "loan processing team" and stated that the called party's "application" had been "preapproved", and four stated "we finally have an approval for you" and "to review your offer and select your terms, press 2 now." Digital Solutions confirmed that it originated those calls and identified three of its customers as their sources. *Digital Solutions Inc.*, Final Determination Order and Removal Order, DA 26-1073, ¶¶ 8–9 (EB 5 Oct. 2026). The Commission's notice



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

to Digital Solutions labels the loan calls with the Industry Traceback Group's campaign name, "Loan-Approval-P5".

43. The calls to Plaintiff follow the pattern the Commission described: prerecorded messages telling the recipient that a loan has been pre-approved or is with underwriting, and inviting the recipient to press a key to be connected. Of the 216 messages to Plaintiff, at least 72 refer to a pre-approval, at least 61 refer to underwriting, and at least 60 invite him to press 2.

44. Digital Solutions and RTE are tied together in other ways. Digital Solutions' registered agent, First Tele Communications, Inc., uses as its own registered agent National Asset Management Inc, whose registered agent is Nikoo Incorporated; Nikoo Incorporated and Nikoo Products Inc both use National Asset Management Inc as their registered agent; and RTE's registered agent is Nikoo Products Inc. Dkt. 10-1 ¶¶ 5, 7 & Exs. 2–3. Digital Solutions' written responses to the Commission were sent from the address DavidA@gdstelecom.net. RTE's chief executive officer is Dave Ahmadbadi, and RTE's 2024 annual report to the Washington Utilities and Transportation Commission gives the contact for its chief information officer as dave.a@rteedge.com. *Id.* ¶ 8.

45. Digital Solutions cannot be found at any address it has given. The Commission's mail to its address of record was returned marked "NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD." DA 26-1073 ¶ 11 n.52. Process servers were told that its registered agent was unknown at the agent's address, and that none of the businesses named in the papers exists at its principal address. Dkt. 9. Plaintiff alleges on information and belief that Digital Solutions is operated by, or in concert with, persons who also control RTE.

46. Plaintiff therefore alleges, on information and belief, that the callback numbers given to Plaintiff were reserved and administered by 46 Labs for RTE and Digital Solutions, for the use of their customer or customers acting for Executive Lending Unit; that Digital Solutions originated calls of the campaign; that RTE carried calls of the campaign for its



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

customers; and that 46 Labs routed the returned calls to the campaign. The precise division of these roles is within Defendants' knowledge and records, and Plaintiff pleads them in the alternative to the extent they differ.

**D. Each carrier knew what the traffic was**

47. Digital Solutions knew by 2 April 2026 at the latest. On that date the Commission's Enforcement Bureau sent it a Notification of Suspected Illegal Traffic identifying the traced prerecorded calls that it had originated, and requiring it to investigate, to block the identified traffic and substantially similar traffic, and to report. Digital Solutions did not comply. It told the Bureau that it had "taken action [a] long time ago and vacated those customer profiles", but it never gave the results of an investigation, never certified that it was blocking the traffic, and never described any plan to block substantially similar traffic. DA 26-1073 ¶¶ 11, 14, 18, 20–21. The Bureau issued an Initial Determination Order on 29 June 2026, DA 26-643, and on 5 October 2026 issued the Final Determination Order and Removal Order, DA 26-1073. At least 166 of the calls to Plaintiff were made on or after 2 April 2026.

48. RTE knew by 29 July 2026 at the latest. Its chief executive officer has declared that the plaintiff in *Marchetti* sent RTE emails about the calls, including a written demand dated 27 July 2026, which were received at RTE's legal and compliance mailbox and forwarded to him, and that he replied on 29 July 2026. *Marchetti*, Doc. 25-2 ¶ 11. On 10 August 2026 RTE was named as a defendant in *Svoboda* on the strength of Hypercube's records tying it to the campaign's callback numbers, and it was also sued in *Marchetti*. At least 81 of the calls to Plaintiff were made after 27 July 2026, and at least 75 on or after 10 August 2026.

49. 46 Labs knew by 10 August 2026 at the latest, because its own subsidiary had produced to the *Svoboda* plaintiff the records tying RTE and Digital Solutions to the campaign's callback numbers, and the *Svoboda* plaintiff named both on that date. 46 Labs



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

was itself sued over the campaign in *Marchetti*, and moved to dismiss that action on 8 September 2026. As the RespOrg for the campaign's callback numbers, 46 Labs also knew from its own records that one customer had moved well over one hundred toll-free numbers into its account on a single day, and it knew the volume and destination of the returned calls those numbers generated.

50. Plaintiff alleges on information and belief that each carrier knew much earlier, or deliberately avoided knowing, from the volume, pattern and content of the traffic and from the complaints it generated. Members of the public who called back numbers given to Plaintiff reported in public consumer complaints, including reports to the Better Business Bureau, that the persons answering identified their company as "Executive Lending" (on 888-269-4978 and 855-357-2024), as "Lending Resource Center" (on 855-909-0815, 866-959-1526 and 855-994-2142), and as "Monarch Lending Union" of Miami, Florida (on 877-961-0390). Those victims reported that the callers refused to give an address, gave different company names on different calls, and kept calling after being asked to stop.

51. Each carrier nevertheless continued to originate, carry, route, administer or supply numbers for the campaign's traffic. At least 44 of the calls to Plaintiff were made on or after 5 October 2026, the date of the Final Determination Order, and at least 17 were made on or after 21 October 2026, the day after the *Marchetti* court refused to dismiss the TCPA claims against 46 Labs.

**E. The 8 October 2026 move of the campaign's numbers from TUI05 to TUI07**

52. The Final Determination Order of 5 October 2026 removed Digital Solutions from the Robocall Mitigation Database and directed every provider immediately downstream of it to block and cease accepting all of its traffic beginning 30 days later. The removal took effect at once: it "requires all intermediate providers and voice service providers to cease accepting calls directly from the Company." DA 26-1073 ¶ 1; 47 C.F.R. § 64.6305(g).

53. Three days later, on 8 October 2026, the campaign's callback numbers held under



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

code TUI05 were moved to code TUI07 of the same RespOrg. The registry history records each of the 68 TUI05 numbers given to Plaintiff, including all 24 numbers in the 877-578 block and 877-578-3476 itself, as held under TUI07 since 8 October 2026. The numbers held under TUI02 were not moved. A move between two codes of one RespOrg is made by that RespOrg, so 46 Labs moved the numbers, or accepted their move, in the week after the Commission cut off the campaign's originating provider.

54. Plaintiff alleges on information and belief that the purpose and effect of the move was to keep the campaign's callback numbers working, and to separate them from the account or code associated with Digital Solutions, so that the campaign could continue after the Commission shut off Digital Solutions. The campaign did continue. At least 38 calls reached Plaintiff on or after 8 October 2026, and 20 of them gave callback numbers that had just been moved to TUI07.

**F. Each carrier could have stopped the calls**

55. Each carrier could have stopped this traffic. Digital Solutions could have refused to originate it. RTE could have refused to carry it. 46 Labs, as the RespOrg, could have stopped routing returned calls to the campaign, or suspended or disconnected the numbers, each with a change to records that it controls. Each also could have blocked calls displaying caller identification numbers that its customer could not lawfully use.

56. From 5 October 2026 each downstream carrier also had the Commission's express permission to stop the traffic. The Final Determination Order provided that downstream providers "may block and cease accepting traffic from Digital Solutions before the expiration of this 30-calendar-day period if they provide the Commission with notice and a brief summary of the basis for their determination". DA 26-1073 ¶ 1. On information and belief, none of the Defendants gave the Commission that notice or blocked the traffic.

57. The calls stopped when 46 Labs was served. Before then they had arrived almost every day, with 17 calls between 21 and 30 October 2026. 46 Labs' registered agent accepted



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

service of the summons and the First Amended Complaint at 9:49 a.m. Central Time on 30 October 2026. Dkt. 8. The last call of the campaign known to Plaintiff arrived at about 5:17 p.m. Pacific Time that day, and no further call of the campaign has left a message on Plaintiff's telephone since.

**G. Caller identification and spoofing**

58. Each call to Plaintiff displayed a caller identification number that, on information and belief, was not assigned to the customer that placed the call (¶ 31). On information and belief, each carrier that originated or carried the calls either signed them with a caller identification attestation, passed them on as legitimate, or failed to authenticate them, and each knew or consciously avoided knowing that the displayed numbers were false. Displaying a local or familiar number increases the likelihood that the recipient will answer or listen to the message.

59. The Commission found that Digital Solutions had certified that it authenticates the caller identification information for all Session Initiation Protocol calls it originates, but that ten calls in the traced traffic carried SIP Identity headers signed with certificates issued to providers other than Digital Solutions, and that Digital Solutions never cured that deficiency in its Robocall Mitigation Database certification. DA 26-1073 ¶¶ 10, 13, 19. On 12 July 2026 Digital Solutions filed a further certification, signed by its chief executive officer under penalty of perjury, that answered "no" to the question whether it had at any time in the prior two years been the subject of a formal Commission investigation with accompanying findings of actual or suspected wrongdoing. *Id.* ¶ 17.

**H. Each carrier profited from the traffic**

60. Each carrier earned money from the campaign. On information and belief, Digital Solutions charged its customers to originate the calls, RTE charged its customers to carry them and to provide the callback numbers, and 46 Labs charged for reserving and administering the toll-free numbers and for carrying and routing the returned calls. The



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

holder of a toll-free number pays for the calls made to it, so every returned call generated revenue for the providers that routed it. Plaintiff alleges on information and belief that one or more of the carriers shared that inbound revenue with the account holder.

**I. No Defendant complied or had an effective mitigation plan**

61. No Defendant acted in compliance with 47 U.S.C. § 227, 16 C.F.R. Part 310 and related regulations in relation to these calls, and none implemented a reasonably effective plan to mitigate the origination, initiation or transmission of such commercial solicitations. The Commission has found that Digital Solutions gave no results of an investigation, did not certify that it was blocking the traffic, provided no plan to block substantially similar traffic, and left a deficiency in its mitigation certification uncured, and it removed Digital Solutions from the Robocall Mitigation Database. RTE carried the campaign's traffic for its customers for months after it was told what the traffic was. 46 Labs accepted well over one hundred of the campaign's numbers into one account on one day, kept them working after its subsidiary produced the records naming RTE and Digital Solutions, and moved 68 of them to a new code three days after the Commission cut off the campaign's originating provider. A plan under which those things happen is not a reasonably effective plan.

**J. Each carrier was so involved in the calls as to be deemed to have initiated them**

62. Under the Commission's rulings, a person "initiates" a call when it takes the steps necessary to physically place it, and a person who did not physically place a call may be "so involved in placing the call as to be deemed to have initiated it", considering the totality of the facts and circumstances. *Rules & Regulations Implementing the TCPA*, 30 FCC Rcd 7961, 7980 ¶ 30 (2015). The relevant factors include control over the message, the timing and the recipients; whether the service is merely reactive; the extent to which the person willfully enables fraudulent spoofing of telephone numbers or assists in blocking caller identification; and whether a person offering a calling platform has knowingly allowed its clients to use it for unlawful purposes. *Id.*; *Cunningham v. Montes*, 378 F. Supp. 3d 741,



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

747–48 (W.D. Wis. 2019). Separately, a carrier's exemption from liability exists only in the absence of "a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions." 68 Fed. Reg. 44144, 44168–69 ¶ 138 (25 July 2003) (quoting 7 FCC Rcd 8752, 8780 ¶ 54 (1992)). Either a high degree of involvement or actual notice followed by a failure to act is sufficient.

63. **Digital Solutions.** Digital Solutions physically placed the campaign's calls onto the telephone network as their originating provider, and so initiated them. It controlled whether and when its customers' calls entered the network. Its service was not merely reactive: it kept originating the traffic after the Commission told it the traffic was illegal, and never identified to the Commission or cut off the customers responsible. It enabled the spoofing of caller identification by originating calls that displayed numbers its customers did not hold, and by originating calls signed with other providers' certificates. It knowingly allowed its customers to use its service for unlawful purposes after actual notice on 2 April 2026, and at least 166 of the calls to Plaintiff followed. Whether Digital Solutions also controlled the content of the messages or the selection of recipients is within its records and is not yet known to Plaintiff.

64. **RTE.** RTE's customers, or their customers, placed the campaign's traffic over RTE's network (¶ 41), and RTE contracted with 46 Labs concerning the campaign's callback numbers (¶ 37). By holding the numbers on which the messages depended, RTE controlled where the responses to the solicitations went, which is the purpose of each call. Its service was not merely reactive, because it obtained and held specific callback numbers for the campaign rather than simply transmitting traffic. It carried calls displaying caller identification numbers that its customers did not hold. It knowingly allowed its customers to use its network and its numbers for unlawful purposes after actual notice by 29 July 2026, and at least 81 of the calls to Plaintiff followed. Whether RTE also selected the recipients or the timing of the calls is within its records and is not yet known to Plaintiff.



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

65. **46 Labs.** 46 Labs reserved, administered and routed the callback numbers on which 189 of the messages depended, and it controlled where each returned call went. Its service was not merely reactive: it accepted well over one hundred numbers into one account on one day, kept them working after its own subsidiary identified RTE and Digital Solutions, and moved 68 of them to a new code three days after the Commission cut off Digital Solutions. It knowingly allowed its customers to use its numbers for unlawful purposes after actual notice by 10 August 2026, and at least 75 of the calls to Plaintiff followed. Whether 46 Labs also carried the outbound calls, and what it knew of their content, is within its records and is not yet known to Plaintiff.

66. In addition, each Defendant is vicariously liable for calls made by the others. On information and belief, Executive Lending Unit and the carriers acted for one another in the campaign, and each Defendant ratified the calls and accepted their benefits after learning that they were unlawful.

67. Defendants' conduct was knowing and willful. They knew the calls were made with a prerecorded or artificial voice, knew that they were made to people who had not consented, and continued after regulators and other plaintiffs had told them so.

### K. Harm to Plaintiff

68. The calls invaded Plaintiff's privacy and intruded upon his seclusion, which is the harm Congress and the Washington Legislature enacted these statutes to prevent. They occupied his telephone line and voicemail storage, interrupted him, including in the middle of the night, and required him to spend time reviewing, recording and preserving 216 messages. Plaintiff registered his number on the National Do Not Call Registry precisely so that he would not receive such calls.

## V. CLAIMS FOR RELIEF

### COUNT I — Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii) (prerecorded or artificial-voice calls to a cellular telephone) — against all Defendants



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

69. Plaintiff incorporates the preceding paragraphs.

70. Defendants made, initiated, or caused to be made, 216 calls to Plaintiff's cellular telephone number using an artificial or prerecorded voice, without his prior express consent and not for emergency purposes, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

71. Executive Lending Unit is directly liable as the person on whose behalf the calls were made. Digital Solutions is directly liable as the originating provider that placed the calls. RTE and 46 Labs are directly liable because they were so involved in placing the calls as to be deemed to have initiated them, and because they continued to carry the calls and to supply and route the campaign's numbers after actual notice of their unlawful use (¶¶ 62–65). Each Defendant is also vicariously liable (¶ 66).

72. Plaintiff is entitled under 47 U.S.C. § 227(b)(3) to $500 in statutory damages for each call, and to up to $1,500 for each call because the violations were willful or knowing, together with an injunction.

**COUNT II — Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) (telephone solicitations to a number on the National Do Not Call Registry) — against all Defendants**

73. Plaintiff incorporates the preceding paragraphs.

74. Plaintiff's number was registered on the National Do Not Call Registry for more than 31 days before each call. Defendants initiated, or caused to be initiated, more than one telephone solicitation to that number within a twelve-month period, in violation of 47 C.F.R. § 64.1200(c)(2).

75. Plaintiff is entitled under 47 U.S.C. § 227(c)(5) to up to $500 in statutory damages for each violation, and to up to $1,500 for each violation because the violations were willful or knowing, together with an injunction.

**COUNT III — RCW 80.36.400(2) (use of an automatic dialing and announcing device for commercial solicitation) — against Executive Lending Unit, Digital Solutions and**



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

**Does 2 through 20**

76. Plaintiff incorporates the preceding paragraphs.

77. Each call was made using an “automatic dialing and announcing device”, a system which automatically dials telephone numbers and transmits a recorded or artificial voice message once a connection is made. Under RCW 80.36.400(1)(b), such a message is transmitted “even if the recorded or artificial message goes directly to a recipient’s voicemail.”

78. Executive Lending Unit used the device for purposes of commercial solicitation, and Digital Solutions, as the originating provider that placed the calls onto the network, used it with Executive Lending Unit. Each call was a commercial solicitation intended to be received by a telephone customer within the State of Washington (¶¶ 18–21).

79. Under RCW 80.36.400(4), Plaintiff is entitled to recover actual damages or $1,000 for each violation, whichever is greater, and to an injunction against further violations.

**COUNT IV — RCW 80.36.400(3) (assisting in the transmission of commercial solicitations made by automatic dialing and announcing device) — against Digital Solutions, RTE, 46 Labs and Does 2 through 20**

80. Plaintiff incorporates the preceding paragraphs.

81. RCW 80.36.400(3) provides that “[n]o person may assist in the transmission of a commercial solicitation described in subsection (2) of this section.” “Assist in the transmission” means “actions taken to provide substantial assistance or support, which enables any person to formulate, originate, initiate, or transmit a commercial solicitation when the person providing the assistance knows or consciously avoids knowing that the initiator of the commercial solicitation is engaged, or intends to engage, in any practice that violates chapter 19.86 RCW, the consumer protection act.” RCW 80.36.400(1)(a)(i).

82. Each of Digital Solutions, RTE and 46 Labs provided substantial assistance and



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

support that enabled Executive Lending Unit to originate, initiate and transmit the solicitations described in Count III. Digital Solutions originated the calls. RTE carried them for its customers and contracted concerning the campaign's callback numbers. 46 Labs reserved, administered and routed the callback numbers on which 189 of the 216 messages depended, without which those messages could not produce a returned call, and moved 68 of them to a new code three days after the Commission cut off Digital Solutions.

83. Each did so knowing, or consciously avoiding knowing, that Executive Lending Unit was engaged in practices that violate the Consumer Protection Act. Those practices include the use of an automatic dialing and announcing device for commercial solicitation, which RCW 80.36.400(4) makes an unfair or deceptive act in trade or commerce for the purpose of the Consumer Protection Act; telephone solicitation of numbers on the National Do Not Call Registry, which RCW 80.36.390(12) treats the same way; and the false representation in the messages that Plaintiff had applied for, requested or been pre-approved for a loan (¶ 30). Each carrier's knowledge, or conscious avoidance, is shown by the notice it received (¶¶ 47–49), by the falsified caller identification on every call, by the transfer of well over one hundred numbers into one account on one day, and by the move of the numbers on 8 October 2026.

84. None of these Defendants falls within an exclusion. Each did more than design, manufacture or distribute technology with a commercially significant lawful use: each supplied, administered, originated or carried the particular numbers and calls of this campaign. None provided only internet access. None acted as a terminating provider: the calls were delivered to Plaintiff by T-Mobile, and RCW 80.36.400(1)(a)(ii)(C) excludes only the activities of a terminating provider, defined as "a telecommunications provider that provides voice services to an end user customer." RCW 80.36.400(1)(d).

85. The affirmative defense in RCW 80.36.400(3) is unavailable to each of them. That defense requires a telecommunications provider to prove both that it acted in



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

compliance with 47 U.S.C. § 227, 16 C.F.R. Part 310 and related regulations, and that it implemented a reasonably effective plan to mitigate the origination, initiation or transmission of such solicitations. None of them did either (¶ 61).

86. The Washington Legislature enacted this provision because it found “that the most effective way to prevent illegal robocalling is to ensure that those calls never originate or enter the telephone network,” and intended “to extend liability to those persons who provide substantial assistance or support in the origination and transmission of robocalls that violate RCW 80.36.400.” Laws of 2023, ch. 103, § 1(2). Each of these Defendants is such a person.

87. Each violated RCW 80.36.400(3) for each call to which it gave substantial assistance. For 46 Labs those calls include at least the 189 calls that gave a callback number in its account, and for Digital Solutions and RTE they include each of the 216 calls. Under RCW 80.36.400(4), Plaintiff is entitled to recover actual damages or $1,000 for each violation, whichever is greater, and to an injunction against further violations.

**COUNT V — RCW 80.36.390(9), (10) and (13) (telephone solicitations to a Washington number on the National Do Not Call Registry, and with falsified caller identification) — against Executive Lending Unit, Digital Solutions and Does 2 through 20**

88. Plaintiff incorporates the preceding paragraphs.

89. Executive Lending Unit and Digital Solutions initiated, or caused to be initiated, telephone solicitations to a telephone number registered on the National Do Not Call Registry, intended to be received by a telephone customer within the State of Washington, in violation of RCW 80.36.390(9). Executive Lending Unit is the person on whose behalf the solicitations were initiated, and Digital Solutions, which the Commission identified as the originating provider of the campaign, placed them into the telephone network.

90. Each of those solicitations also violated 47 U.S.C. § 227(e)(1). Executive Lending Unit and Digital Solutions caused a caller identification service knowingly to



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

transmit misleading or inaccurate caller identification information (¶ 31), with the intent to defraud, cause harm or wrongfully obtain anything of value, including by inducing Plaintiff to return calls to a lender that falsely claimed he had applied for a loan. Each solicitation therefore also violated RCW 80.36.390(10).

91. RCW 80.36.390 contains no provision extending liability to a person who assists in the transmission of a solicitation, and Plaintiff therefore brings this Count only against the Defendants who initiated the calls or caused them to be initiated.

92. The violations were repeated. Under RCW 80.36.390(13), the Court "shall award damages of at least $1,000 for each individual violation of this section."

**COUNT VI — Washington Consumer Protection Act, RCW 19.86.020 and 19.86.090 — against all Defendants**

93. Plaintiff incorporates the preceding paragraphs.

94. By statute, a violation of RCW 80.36.390 or RCW 80.36.400 is an unfair or deceptive act in trade or commerce and an unfair method of competition, and a matter vitally affecting the public interest, for the purpose of applying the Consumer Protection Act. RCW 80.36.390(12); RCW 80.36.400(4). In addition, the messages' false statements that Plaintiff had applied for or been pre-approved for a loan were deceptive acts in trade or commerce.

95. A non-resident may bring a Consumer Protection Act claim against a Washington defendant, and against an out-of-state defendant for the acts of its Washington agent. *Thornell v. Seattle Service Bureau, Inc.*, 184 Wn.2d 793, 363 P.3d 587 (2015).

96. Plaintiff was injured in his property by the occupation of his telephone line, voicemail and time. Under RCW 19.86.090, Plaintiff is entitled to actual damages, increased damages of up to three times his actual damages subject to the statutory limit, an injunction, and his costs.

## VI. PRAYER FOR RELIEF

Plaintiff asks the Court to enter judgment in his favor and against Defendants, jointly and



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

severally to the extent the law allows, for:

A. Statutory damages under 47 U.S.C. § 227(b)(3) of $500 for each of the 216 calls, trebled to $1,500 for each call as willful or knowing violations, for a total of $324,000;

B. Statutory damages under 47 U.S.C. § 227(c)(5) of $500 for each of the 216 violations, trebled to $1,500 for each as willful or knowing violations, for a total of $324,000;

C. Damages under RCW 80.36.400(4) of $1,000 for each violation of RCW 80.36.400(2) and for each violation of RCW 80.36.400(3), against each Defendant liable for it, and in any event not less than $216,000;

D. Damages against the Defendants named in Count V under RCW 80.36.390(13) of at least $1,000 for each individual violation, and in any event not less than $216,000;

E. Actual and increased damages under RCW 19.86.090;

F. A permanent injunction prohibiting each Defendant from making, initiating, originating, transmitting or routing, or assisting in the transmission of, any prerecorded or artificial-voice call or telephone solicitation to Plaintiff's telephone number, and from reserving, administering or routing any toll-free number for use in such calls;

G. Pre-judgment and post-judgment interest as allowed by law;

H. Plaintiff's costs; and

I. Such other relief as the Court considers just.



Daniel Raede Guerin, pro se
500 Westover Dr #36486, Sanford, NC 27330
(360) 674-0698

## VII. DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

DATED this 11th day of November, 2026.

Daniel Raede Guerin, Plaintiff, pro se
500 Westover Dr #36486
Sanford, NC 27330
Telephone: (360) 674-0698
Email: danny@dannyraede.com